# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

One Sprint Corporation cellular telephone bearing the number 310-927-8703

Case No. **19MJ3711**

FILED
AUG 3 0 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-4, which is incorporated by reference.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-4, which is incorporated by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841 and 846 | Distribution of controlled substances and conspiracy to do the same |

The application is based on these facts:

See Affidavit of DEA SA James Peters, which is hereby inorporated by reference and made part hereof.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

James M. Peters, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/29/2019

_____
Judge's signature

City and state: San Diego, California

Honorable Andrew G. Schopler, US Magistrate Judge
*Printed name and title*

## ATTACHMENT A-4

Sprint Corporation hosts the electronic communication account associated with the telephone number 310-927-8703 that is the subject of this search warrant and search warrant application (the "**Subject Account 4**").

Sprint Corp. is an electronic communication service provider whose primary computer information systems and other electronic communications and storage systems, records, and data are located at 6480 Sprint Parkway, Overland Park, Kansas 66251.

## ATTACHMENT B-4

**I.**  Service of Warrant

The officer executing the warrant shall permit the Provider in Attachment A-4, as custodian of the electronic files described in Section II below, to locate the files and copy them onto removable electronic storage media and deliver the same to the officer.

**II.**  Items to be Seized

Agents shall seize the following records, data, and information covering April 1, 2019 to April 12, 2019 and maintained by the Provider for the subject account identified in Attachment A-4:

   a. Subscriber information, including:
      i. Names;
      ii. Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
      iii. Local and long distance telephone connection records;
      iv. Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;
      v. Length of service (including start date) and types of service utilized;
      vi. Telephone or instrument numbers, including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"); Mobile Identification Number ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"); International Mobile Subscriber Identity Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI");
      vii. Other subscriber numbers or identities; and
      viii. Means and source of payment (including any credit card or bank account number) and billing records.

   b. Records and other information about past wire or electronic communications sent or received by the subject account, including:

      i. the date and time of the communication;
     ii. the method of the communication;
    iii. the source and destination of the communication, such as the source and destination telephone numbers (call detail records), email addresses, or IP addresses; [and]
    iv. Cell site locations and sectors for all outgoing and incoming voice, SMS, MMS, and Data communications; [and]
     v. All available PCMD reports for April 1, 2019 to April 12, 2019.

which are evidence of violations of 21 U.S.C. 841(a) and (b)(1)(C), and 21 U.S.C. § 846.

## AFFIDAVIT IN SUPPORT OF
## APPLICATION FOR SEARCH WARRANT

I, James Peters, being duly sworn, state as follows:

1. This affidavit is in support of an application by the United States of America for a search warrant for subscriber information, telephone toll data, and cell-site geolocation data from April 1, 2019 to April 12, 2019 for:

   **a.** A Verizon Wireless cellular telephone, described further in Attachment A-1, bearing number 619-788-1711, believed to be used primarily by Derrick Roland Hotchkiss ("**Subject Account 1**");

   **b.** An AT&T Wireless cellular telephone bearing number 858-722-0518, described further in Attachment A-2, believed to be used primarily by Christopher Glenn Emison ("**Subject Account 2**");

   **c.** A Verizon Wireless cellular telephone bearing number 916-710-5031, described further in Attachment A-3, believed to be used primarily by Jeffrey Alden Blair ("**Subject Account 3**"); and .

   **d.** A Sprint Corporation cellular telephone bearing number 310-927-8703, described further in Attachment A-4, believed to be used primarily by Andrew Samuel Daniel Gossai ("**Subject Account 4**");

2. There is probable cause that these records and information constitute evidence, fruits, and instrumentalities of violations of federal criminal law, namely, Title 21, United States Code Sections 841(a)(1) and (b)(1)(C) and 846, as described in Attachment B-1, B-2, B-3 and B-4. This affidavit and application are sought pursuant to Rule 41 of the Federal Rules of Criminal Procedure and 18 U.S.C. § 2703(a), which applies to providers of electronic communication services. In this case, as will be shown below, AT&T Wireless, Sprint Corporation, and Verizon Wireless provides electronic communication services in the form of cellular and wireless telephone service for the subject accounts.

## EXPERIENCE & TRAINING

3. I am a Special Agent Criminal Investigator for the United States Drug

Enforcement Administration (DEA), and I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18 of the United States Code. I am empowered by law to conduct investigations and to make arrests for felony offenses. I was hired by the DEA in October of 2011, and I attended the DEA academy for approximately seventeen weeks. At the DEA Academy, I was trained in all aspects of conducting narcotics investigations. In February 2012, I was sworn as a DEA Special Agent (SA) and assigned to DEA San Diego Field Division (SDFD).

4. While with the DEA, I have participated in over 100 narcotics investigations and more than 100 arrests for alleged criminal violations of the Controlled Substances Act laws. These investigations and arrests have involved: (1) unlawful importation, exportation, manufacture, possession with intent to distribute, and distribution of narcotics; (2) the laundering of narcotics proceeds and monetary instruments derived from narcotics activities; and (3) conspiracies associated with narcotics offenses. These investigations have involved debriefing defendants, witnesses, and informants, conducting surveillance, assisting in court-ordered interceptions, executing search warrants, seizing narcotics and narcotics-related assets, and making arrests for narcotics-related offenses.

5. I am currently assigned to DEA SDFD's San Diego County Integrated Narcotics Task Force (NTF) Team 10 and have been since October 2018. NTF Team 10 is comprised of DEA SAs and Task Force Agents (TFAs) and Officers (TFOs) from the Federal Bureau of Investigation (FBI), Homeland Security Investigations (HSI), San Diego Police Department (SDPD), and California Department of Health Care Services (DHCS). Team 10 primarily investigates illegal drug trafficking organizations operating in the U.S. and internationally, including those organizations whose operations involve the distribution of wholesale quantities of fentanyl, cocaine, controlled pharmaceutical drugs, heroin, hashish, methamphetamine, and marijuana in and around San Diego,

1 California. Notably, Team 10 focuses on investigating illegal drug distribution related
2 to drug overdose deaths in San Diego County.

3   6.   The facts and conclusions set forth in this affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation; my review of documents and records related to this investigation; communications with others who have personal knowledge of the events, details, and circumstances described herein; and information gained through my training, experience, and communications with colleagues. Because this affidavit is submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth each and every fact that I or others have learned during the course of this investigation. Dates, times, and amounts are approximate.

## STATEMENT OF PROBABLE CAUSE

7.   On April 11, 2019, San Diego Police Department (SDPD) Officers responded to 3126 Skipper Street, San Diego, California 92123, to a report of an unresponsive male, subsequently positively identified as Derrick Roland Hotchkiss, following which he was pronounced dead at the scene. SDPD Officers and San Diego County Medical Examiners Investigators (MEIs) discovered evidence of a suspected drug overdose in the form of a white powdery substance, which presumptively tested positive for the presence of fentanyl. During that time, MEIs also located Hotchkiss' cellular phone in his pants pocket. Notably, Hotchkiss' cellular telephone was determined to have an associated telephone number of 619-788-1711 and serviced by Verizon Wireless (hereinafter referred to as "**Subject Account 1**").

8.   DEA SDFD NTF Team 10 SAs and TFOs thereafter responded to the scene and obtained consent from Hotchkiss' wife to search the aforementioned cellular phone. During a review of the device, SAs located a text message exchange between Hotchkiss and a contact listed as "Krissd" with an associated telephone number of 858-

722-0518 (hereinafter referred to as "**Subject Account 2**"). Based on the content of the messages, Hotchkiss appeared to have purchased fentanyl from "Krissd," who also warned Hotchkiss to be careful as another person he/she sold to previously had overdosed. Hotchkiss did not respond to the warning message sent that was sent in close temporal proximity to the suspected overdose.

9. Based on checks of law enforcement databases, SAs/TFOs learned 858-722-0518 was a phone number utilized by a subject identified as Christopher Glenn Emison and serviced by AT&T (hereinafter referred to as "**Subject Account 2**"). During the field investigation, Hotchkiss' roommate identified a photograph of Emison as an individual known to him as "Chris," and from whom the roommate understood Hotchkiss had previously purchased drugs. Law enforcement databases also identified Emison's address as 8234 ½ Wenatchee Avenue, El Cajon, California 92021.[1]

10. Later that evening, while surveillance was being conducted at the residence, Emison was taken into custody on Wenatchee Avenue after he emerged onto the street from his residence. At the time of his arrest, Emison was in possession of a cellular telephone bearing the aforementioned telephone number of 858-722-0518. Shortly thereafter, SAs/TFOs executed a California State search warrant at the residence and discovered and seized several clear plastic baggies containing approximately 9.19 net grams of fentanyl from on top of Emison's bed which were situated next to a loaded, Ruger .357 Magnum revolver, having six rounds of ammunition in its cylinder. SAs/TFOs also discovered a large quantity of aluminum foil with black burnt residue, demonstrative of Emison's heavy drug use. SAs/TFOs located and seized a digital scale with residue and a notebook containing suspected "pay and owe" notations, indicative of Emison's involvement in drug sales. SAs/TFOs also discovered and seized an

---

[1] AT&T provided DEA with a one-time emergency "ping" of the aforementioned telephone which showed that phone to be in close proximity of 8234 ½ Wenatchee Avenue.

-4-

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

1 unloaded Marlin, Model 60, .22 caliber semi-automatic rifle and a large amount of various caliber ammunition from Emison's bedroom. In addition, SAs/TFOs discovered a "butane honey oil" (BHO; concentrated THC; hash oil) extraction laboratory complete with a vacuum purge oven affixed to a two-stage electrical pump, multiple pounds of marijuana shake/trimmings, coffee filters, 15 large glass cylindrical extraction tubes with residue, Pyrex and metallic collection pans with residue and parchment paper with hash oil reside and handwritten weight notations.

11. Subsequently, a post-arrest, post-*Miranda*, interview of Emison was conducted. During the interview, Emison admitted to heavy personal usage of heroin and "China White," which he believed to contain fentanyl. Additionally, Emison stated that, on the previous night (April 10, 2019), he purchased six grams of "China White" from Jeffrey Alden Blair for $800.00 in Mission Valley, and subsequently furnished Hotchkiss approximately one gram or $160.00 worth of the product. Notably, Emison identified Blair's cellular telephone number as 916-710-5031, which was determined to be serviced by Verizon Wireless (hereinafter referred to as "**Subject Account 3**"). Emison also relayed that Blair had a storage unit at A-1 storage located on Pacific Coast Highway in San Diego, California. Furthermore, Emison asserted the remaining amount of the initial six grams he purchased was located on his bed along with a loaded firearm. Moreover, Emison identified his cellular telephone, with associated telephone number 858-722-0518, and verified his text messages to Hotchkiss which warned him of the product's strength. Emison also relayed that, on the previous night when he was with Blair, a female appeared to overdose and survive, but he claimed she did not use the same product he later furnished to Hotchkiss. In regard to his text message warning to Hotchkiss referencing an overdose, Emison claimed he utilized the female's apparent overdose as the base for a fabricated story in an attempt to get Hotchkiss to be careful with the drugs.

12. On April 12, 2019, SAs/TFOs identified Blair's storage unit at A-1 Self Storage, located at 3911 Pacific Coast Highway, San Diego, California 92110, and subsequently observed Blair inside. At that time, Blair was arrested based on an active misdemeanor bench warrant. At the time of his arrest, Blair was in possession of a cellular telephone bearing the aforementioned number of 916-710-5031. Additionally, SAs/TFOs observed suspected controlled substances and controlled substance paraphernalia in plain view where Blair was contacted. Subsequently, Blair provided consent to search his storage unit. During a search of the storage unit, SAs/TFOs discovered and seized several clear plastic baggies containing approximately 124.14 net grams of fentanyl and a digital scale with residue, indicative of Blair's involvement in drug sales. Additionally, SAs/TFOs discovered aluminum foil with black burnt residue and paraphernalia, demonstrative of Blair's heavy drug use.

13. Subsequently, a post-arrest, post-Miranda, interview of Blair was conducted. During the interview, Blair admitted the substance discovered in the storage unit was fentanyl and he knew it more commonly as "China White." Additionally, Blair stated he purchased the drug in conjunction with Emison during the evening of April 10, 2019 in Mission Valley from a male whom he knew as "Drew." Notably, Blair identified "Drew's" cellular telephone number as 310-927-8703 which was determined to be serviced by Sprint Corporation (hereinafter referred to as "**Subject Account 4**"). Based on checks of law enforcement databases, SAs/TFOs learned 310-927-8703 was a phone number utilized by a subject identified as Andrew Samuel Daniel Gossai, whose photograph was subsequently identified by Blair as the individual known to him as "Drew."

14. On April 18, 2019, DEA SDFD NTF Team 10 executed a California state search warrant at 5745 Friars Road, Unit #125, San Diego, California 92110; the suspected residence of Gossai. Upon executing the search warrant, agents and officers encountered Gossai, Patricia Anne Colgan, and Duncan William Chesser. Notably,

Gossai was on AB109/post-release community supervision with a valid Fourth Amendment waiver stipulation and was the subject of two active felony arrest warrants; Colgan was on probation with a valid Fourth Amendment waiver stipulation; and Chesser was the subject of an active misdemeanor bench warrant. Based on a search of the living room, which was determined to be occupied and resided in by Gossai and Colgan, SAs/TFOs discovered a cellular telephone bearing the aforementioned number of 310-927-8703 (**Subject Account 4**). Furthermore, SAs/TFOs discovered 27.5 net grams of fentanyl, approximately 80 fentanyl laced "blues" (counterfeit Oxycodone 30 mg pills), digital scales with residue, packaging material, "pay and owe" notations, and $1,169.00 United States Currency, indicative of Gossai's involvement in drug sales. Additionally, SAs/TFOs discovered small Ziploc style bags containing suspected drug residue and aluminum foil with black burnt residue, indicative of Gossai's drug use.

15. Subsequently, a post-arrest, post-*Miranda*, interview of Gossai was conducted. During the interview, Gossai admitted to heavy personal usage of blues, which he believed to contain fentanyl. Additionally, Gossai admitted to selling blues and fentanyl powder, but asserted he was scared of the fentanyl powder. Furthermore, Gossai stated he sold 12 grams of fentanyl powder to Blair the previous week and it was their only transaction. Notably, Gossai identified his cellular telephone number as 310-927-8703 (**Subject Account 4**) and claimed the aforementioned transaction with Blair occurred in Mission Valley.

16. Based upon my experience investigating narcotics traffickers and the particular investigation in this case, there is probable cause to believe that Hotchkiss used **Subject Account 1** to coordinate the purchase of fentanyl from Emison, who used **Subject Account 2** to coordinate the purchase and distribution of fentanyl from Blair, who used **Subject Account 3** to coordinate the purchase and distribution of fentanyl from Gossai, who used **Subject Account 4** to coordinate the purchase and distribution of fentanyl. The aforementioned sequence of events occurred on or about April 10,

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

2019, which ultimately resulted in the death of Hotchkiss.

17. On August 23, 2019, Emison and Blair were charged, by Indictment, in this district with the distribution of fentanyl resulting in death in violation of 21 U.S.C. 841(a) and (b)(1)(C) and Gossai was charged, by separate Indictment, with the distribution of fentanyl in violation of 21 U.S.C. § 841(a). The investigation of this matter is ongoing.

18. Cell-site/GPS information will assist agents in gathering evidence in the ongoing investigation described above in the following ways: (1) agents are investigating a conspiracy, and determining concert of action and contact between the conspirators is of value to the investigation; (2) the information will enable agents to identify members of the conspiracy that have not previously been identified; (3) the information will provide insight into the roles and actions of the members of the conspiracy, and the criminal conduct committed by the people being investigated; and (4) it will provide information regarding whether the individuals being investigated met or had contact prior to, or after, committing any criminal conduct.

19. Based on my training and experience, and my consultation with other law enforcement officers, I am aware that AT&T Wireless, Sprint Corporation, and Verizon Wireless routinely collects and stores data for the electronic communication accounts to which it and other providers issue telephone numbers. The data includes: (i) subscribers' contact and billing information; (ii) detailed information concerning subscribers' incoming and outgoing telephone calls; (iii) detailed information concerning subscribers' outgoing direct calls, text message, and SMS messages; and (iv) detailed information concerning cell-site geo-location data.

20. In particular, I know that cell phones connect to a provider's network through cell towers or cell sites. The particular tower or site may change as a phone moves from one location to another. Providers automatically record and retain this connection data as part of the subject account. Records and data identifying the towers

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

-8-

or sites to which a phone connected therefore tend to identify the phone's and phone user's location at particular times.

    a. I also know that different providers use the speed with which signals travel between cell phones and cell towers ("per call measurement data," or "PCMD"), as well as other data, to better calculate and record the location of phones accessing their networks. Different providers may use different terminology to describe PCMD. For example, AT&T has referred to the resulting location information as "NELOS" data; Verizon, as "Real Time Tool" or "RTT" data; Sprint, as PCMD; and T-Mobile, as "timing advance" data.

21. This application requests such per call measurement data (by whatever name the provider uses) for the subject account for the following date and time range April 1, 2019 PST to April 12, 2019 PST.

22. Given these facts, I seek a warrant to search the subject accounts, as described further in Attachments A-1, A-2, A-3 and A-4, for the records and information set forth in Attachments B-1, B-2, B-3 and B-4.

### PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

23. The United States is unaware at this time of other attempts by the U.S. Government to obtain this data by other means.

James Peters
Special Agent
Drug Enforcement Administration

Subscribed and sworn to before me this 29th day of August 2019.

ANDREW G. SCHOPLER
U.S. MAGISTRATE JUDGE

AFFIDAVIT IN SUPPORT OF APPLICATION
FOR SEARCH WARRANT

-9-